**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00837-REB-BNB

TERRY A. JANKE, and
MICHELE JANKE,

    Plaintiffs,

v.

DONALD BROOKS ,
NORMANDY BROOKS, individuals d/b/a B&T Custom Rod & Restoration, and
B&T AUTOMOTIVE, INC., a Nevada corporation,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

**Blackburn, J.**

The matter before me is **Defendants' Motion for Partial Summary Judgment and Memorandum Brief** [#58][1] filed January 31, 2012. I grant the motion in part and deny it in part.[2]

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

---

[1] "[#58]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motion for partial summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10thCir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  **Concrete Works**, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert. denied**, 120 S.Ct. 334 (1999).

## III.  ANALYSIS

Plaintiffs are the owners of a classic ,1957, Chevrolet Nomad.  After seeing a feature on the ESPN program, *On The Block*, plaintiffs contacted defendants, Donald and Normandy Brooks, about restoring their car.  Plaintiffs traveled to defendants' shop in Sparks, Nevada, to discuss the project.  After receiving an estimate for the work and forwarding a deposit, plaintiffs shipped the Nomad to defendants in September 2008.

Plaintiffs allege that they informed defendants that they wanted the car to be ready in time to be entered in and displayed at the "Hot August Nights" classic car show in Reno, Nevada, in early August 2010.  Despite assurances, when plaintiffs arrived in Nevada on July 28, 2010, they learned that the car was not finished.  Subsequently, and prior to the new date set for delivery, plaintiffs were informed that the car's engine block was cracked and would need to be replaced.  Donald Brooks assured plaintiffs that the car would be fixed and shipped to them in Colorado.

On November 17, 2010, the car was delivered to plaintiffs at their home in Wheatridge, Colorado.  The car broke down several times in the first 25 miles, after which plaintiffs hired mechanic Donny Seyfer to inspect and evaluate the build.  They claim Mr. Seyfer discovered a number of defects in the car that could not have been found prior to delivery.  Mr. Seyfer concluded that defendants' "design strategy was unreasonable," that the car was not built consistently with the build sheet, and that the defects in the car "could not have been corrected simply by replacing the defective parts."

This lawsuit followed.  Plaintiffs allege claims for relief for breach of contract, breach of implied warranties under the Uniform Commercial Code, and false

3

representation.[3]  Defendants move for summary judgment on the claims for breach of implied warranty and false representation.  In addition, they argue that Donald and Normandy Brooks cannot be held liable individually for breach of contract.

Pursuant to Colorado's Uniform Commercial Code – Sales, §§4-2-102 - 4-2-725, C.R.S., plaintiffs allege that defendants breached the implied warranty of fitness for a particular purpose, §4-2-315, C.R.S., and the implied warranty of merchantability, §4-2-314, C.R.S.  By its express terms, the UCC applies only to "transactions in goods," §4-2-102(1), C.R.S., and contracts "relating to the present or future sale of goods," §4-2-106(1), C.R.S.[4]  Concomitantly, the UCC does not apply to services.  ***Colorado Carpet Installation, Inc. v. Palmero***, 668 P.2d 1384, 1387 (Colo. 1983).

Moreover, and more relevant here, when the contract contemplates both the sale of goods and the performance of services, "the controlling criterion should be the primary purpose of the contract":

> The test for inclusion or exclusion is not whether [goods and services] are mixed, but, granting that they are mixed,

---

[3]  Plaintiffs conceded their claims for conversion and for violation of the Colorado Consumer Protection Act in their response to the mption for summary judgment, and those claims are not part of the **Final Pretrial Order** [#73] filed March 19,2 012.  Accordingly, defendants' motion as to those claims will be denied as moot.

Moreover, it appears from the pretrial order that plaintiffs likewise have abandoned their claim for violation of the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312.  (***See* Final Pretrial Order** ¶ 3.A at 1-4 (defining plaintiffs' warranty claims as arising entirely under state law).)  Regardless, my conclusion that the state law warranty claims cannot stand would be fatal to this federal claim in any event.  ***See Fedrick v. Mercedes-Benz USA, LLC***, 366 F.Supp.2d 1190, 1200 n.14 (N.D. Ga. 2005) (noting that the Magnuson-Moss Warranty Act "does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law") (citing ***Walsh v. Ford Motor Co.***, 807 F.2d 1000, 1016 (D.C. Cir. 1986), ***cert. denied***, 107 S.Ct. 3188 (1987)).

[4]  "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid . . ." §4-2-105(1), C.R.S.

4

> whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom).

*Id.* (citation and internal quotation marks omitted; alteration in original).  Factors that may bear on this determination include (1) the language of the contract; (2) whether the contract lists a unitary price or bills discretely for goods and labor; (3) the ratio between the cost of goods and the overall contract price; and (4) whether the purchaser has a reasonable expectation of acquiring a property interest in the goods.  *Id.* at 1388-89.

The contract at issue here was just such a mixed contract.  Considering these relevant factors, as well as caselaw from other jurisdictions and the overall thrust of the contract, I find and conclude that it was predominantly a contract for services.  Thus, the warranties implied under the UCC are inapplicable.

The language of the series of price quotes and list sheets that constitute the contract in this case contemplates the installation and/or repair of a number of parts, while other items were to be fabricated by defendants' mechanic himself.  Nevertheless, the enumeration of these parts and materials was not an end unto itself, but rather a necessary prerequisite towards the ultimate end of restoring the car.  If these items could have been fabricated or installed by any competent mechanic, there would have been little reason for plaintiffs' to ship their prized car to a specialty provider far distant from their home.  Although technically plaintiffs ultimately acquired a property interest in all the parts and materials ultimately incorporated into the car, such was merely incidental to the overarching purpose to craft a wholly remodeled car.  In other words, in

this case, the whole was greater than the sum of its parts.[5]

My determination is buttressed by the decisions of other courts that have examined contracts for the restoration or repair of goods under the UCC. Most clearly analogous to the facts of this case is the decision of the Georgia Courts of Appeals in *Heart of Texas Dodge, Inc. v. Star Coach, LLC*, 567 S.E.2d 61 (Ga. App. 2002).[6] The defendant in that case, which defendant specialized in customizing sport utility vehicles and pickup trucks, was hired to convert the plaintiff car dealer's Dodge Durango into a "Shelby SP 360 custom performance vehicle." After the work was completed and the vehicle returned to the plaintiff, it discovered the workmanship to be faulty and stopped payment on its check. *Id.* at 62. After a jury returned a verdict in favor of defendant, plaintiff appealed, arguing that the trial court erred in instructing the jury on certain provisions of the UCC.[7] *Id.* at 63. The court concurred:

> [W]e agree with Heart of Texas Dodge that the facts in this case are closely analogous to repair cases. In analyzing those cases, courts look to the fundamental nature of the transaction. The primary purpose of a repair transaction is

---

[5] Moreover, although parts and materials constituted slightly more than half the price of the total build, that ratio is skewed by the fact that the parties agreed to a 50 per cent markup on the price of new parts and materials. Contrary to plaintiffs' implicit argument, the fact of this markup does not suggest that the sale of goods predominates within this contract. *See Kirkpatrick v. Introspect Healthcare Corp.*, 845 P.2d 800, 803-04 (N.M. 1992) (noting that markup on furnishing purchased pursuant to contract for design services "was only one aspect of a predominantly service-oriented contract").

[6] In addition, the Georgia appeals court noted that, with a single exception, the plaintiff had not complained about the parts themselves, but rather the manner in which they had been installed. *See Heart of Texas Dodge*, 557 S.E.2d at 64. Likewise, in this case, the gravamen of plaintiffs' amended complaint, as judged by the exhibits appended thereto, is not that the components themselves were defective, but that they either were not provided as contemplated by the contract or were improperly installed. (*See* **Amended Complaint** App., Exh. A at 2-3 of 10 (noting number of items "not on car," that "old tie rod ends" had been left on despite contract to rebuild all front suspension, and that "new street & performance headers made for tri-5 Chevy" had been "bent to clear steering box").)

[7] In particular, those provisions requiring a purchaser to allow the seller an opportunity to cure defects prior to refusing payment. *See Heart of Texas Dodge*, 567 S.E.2d at 64-65.

> not to sell or purchase parts, but to change or improve the item and return it to the owner. In such cases, the provision of goods is incidental, and the UCC does not apply.
>
> The predominant element of the contract in this case was the furnishing of a service, namely, the conversion of Heart of Texas Dodge's vehicle and the return of it in a modified condition. Star Coach is in the business of performing labor, not selling parts. . . . The parts which Star Coach needed to perform the conversion were incidental to the contract.

*Id.* at 63-64 (footnote omitted).[8]

Such is almost precisely the case here. Plaintiffs sought out defendants specifically for their expertise in rebuilding and customizing classic cars. Plaintiffs did not buy a car from defendants – they held title to the Chevy at all times relevant to this action. Nor did they simply contract for defendants to acquire the various parts listed in the quotes, which defendants did not manufacture or sell in any event, despite the fact that the purchase of such parts was a necessary prerequisite to the build. Instead, what the contract primarily contemplated was that defendants would bring their specialized knowledge and experience to bear in selecting and installing appropriate parts, repairing existing components, and generally refurbishing the car in such a way as to restore it to a show-worthy condition. (**See Amended Complaint** ¶ 40 at 5 [#22], filed August 12, 2011 (alleging that plaintiffs relied on defendants' "skill or judgment to select or furnish" appropriate components to complete restoration of the car).) Indeed, the primary shortcoming of the build as identified by plaintiffs' expert is that defendants' "design

---

[8] Less factually on point, but still analogous, is the Wisconsin appellate court's decision in *Van Sistine v. Tollard*, 291 N.W.2d 636 (Wis. App. 1980), wherein the court found that a contract to construct a plumbing system was one for services rather than goods, *see id.* at 684-85 (noting, *inter alia*, that defendant contractor "took specific materials and apparatus, manufactured by various dealers, and assembled and connected them into a completed plumbing system").

7

strategy was unreasonable." The application of the skills necessary to create such a design strategy is undoubtedly a service.

I thus conclude that the contract at issue in this case predominantly was one for services. The furnishing of such goods as were necessary to complete the remodel was merely incidental to the provision of such services. Accordingly, defendants are entitled to summary judgment as to plaintiffs' claims for breach of implied warranty under the UCC.

Defendants also seek summary judgment on plaintiffs' claim for "deceit based on fraud" (renamed in the Final Pretrial Order as "false representation"), arguing that it implicates Colorado's economic loss rule. The economic loss rule prevents a party from recovering in tort for a mere breach of the contract. ***See Town of Alma v. Azco Construction, Inc.***, 10 P.3d 1256, 1264 (Colo. 2000). Stated differently, the failure to perform a contract generally does not give rise to liability in tort. Application of the rule depends on the particular facts of each case, and no type of claim is categorically exempt. ***See Makoto USA, Inc. v. Russell***, 250 P.3d 625, 628 (Colo. App. 2009).

Plaintiffs claim that defendants owed them a duty independent of the contract, the breach of which is not within the ambit of the economic loss rule. ***See Town of Alma***, 10 P.3d at 1263. The cases they cite in support, however, are inapposite, invoking principles sounding in negligence rather than fraud. ***See International Harvester Co. v. Sharoff***, 202 F.2d 52, 54 (10th Cir. 1953) (noting "principle that a manufacturer or assembler of goods is liable for injuries caused to persons by defects therein for failure to properly inspect and discover inherent defects, if the nature of the

thing is such that it is reasonably certain to place life and limb in peril when negligently constructed"); *see also Westric Battery Co. v. Standard Electric Co.*, 482 F.2d 1307, 1313 (10th Cir. 1973).

Moreover, a claim is considered independent of the contract only when two conditions are satisfied: (1) "the duty must arise from a source other than the relevant contract;" and (2) "the duty must not be a duty also imposed by the contract." *Haynes Trane Service Agency, Inc. v. American Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (citing Colorado cases). Plaintiffs have failed to demonstrate how either of these elements is satisfied on the record before. Indeed, they do not even identify any alleged fraudulent statement that might form the basis of such a claim. Summary judgment as to this claim therefore also is proper.

Finally, defendants seek summary judgment as to plaintiffs' claims against defendants Donald and Normandy Brooks individually. Neither individual defendant's name appears on any of the documents that comprise the parties' written understanding of their agreement. Nevertheless, plaintiffs met and negotiated with the Brookses, who held themselves out as owners of "B&T Custom Rod and Restoration." Although B&T Custom Rod and Restoration is the d/b/a of defendant B&T Automotive Inc it appears uncontested that none of the documents included the name of B&T Automotive Inc. nor any indication that "B&T Custom Rod and Restoration" was a d/b/a for defendant B&T Automotive, Inc.

Plaintiffs thus claim that the Brookses are liable as agents of an undisclosed or partially disclosed principal. "[W]here the principal is partially disclosed (i.e. the

9

existence of a principal is known but his identity is not), it is usually inferred that the agent is a party to the contract." ***Water, Waste & Land, Inc. v. Lanham***, 955 P.2d 997, 1001 (Colo. 1988) (citation and internal quotation marks omitted); ***see also Flatiron Paving Co. v. Wilkin***, 725 P.2d 103, 105-06 (Colo. App. 1986).[9]  Defendants contend that plaintiffs knew they were dealing with a corporate entity and thus should not be permitted to inflict personal liability on the Brookses.[10]

Whatever the potential implications of the undisclosed principal rule for the conduct of business relations, however, the law is clear.  ***See Water, Waste & Land, Inc.***, 955 P.2d at 1001 (acknowledging that rule appears "counterintuitive").  Knowledge of the mere existence of a principal itself is insufficient.  The law requires that the true identity of the principal have been explicitly disclosed:[11]

> The agent must be specific in this disclosure.  The disclosure of an agency is not complete for the purpose of relieving the agent from personal liability unless it embraces the name of the principal.  Nor is it sufficient if the agent merely uses the trade name of the principal.  The use of a trade name is not necessarily a sufficient disclosure of the identity of the principal and the fact of agency so as to protect the agent against personal liability. . . .  Accordingly, if the agent's only evidence of disclosing the fact of the agency and the identity of the principal is use of the principal's trade name, summary

---

[9] Although a plaintiff may proceed against both an agent and his undisclosed or partially disclosed principal in a single action, "on objection by either the principal or the agent, the trial court at some time prior to judgment may require the plaintiff to elect the party he will proceed against." ***Flatiron Paving Co.***, 725 P.2d at 106 (citing ***Conner v. Steel, Inc.***, 470 P.2d 71, 73 (Colo. App. 1970)).

[10] A party is considered to have notice of the existence or identity of the principal if it "knows, has reason to know, or should know of it, or has been given a notification of the fact." **RESTATEMENT (SECOND) OF AGENCY** § 4, cmt. a.

[11] Although these cases come from other jurisdictions, they are persuasive because, as in Colorado, they follow the precepts of the Restatement (Second) of Agency on this matter. ***See Filho v. Rodriguez***, 36 P.3d 199, 200 (Colo. App. 2001) (citing **RESTATEMENT (SECOND) OF AGENCY** § 292); ***see also*** CJI-Civil 4th 7:4, Sources and Authority.

judgment against the agent individually is usually warranted.

*Yim v. J's Fashion Accessories, Inc.*, 680 S.E.2d 466, 468 (Ga. App. 2009) (internal citations, quotation marks, alterations, and footnotes omitted). *See also Alaska Cascade Financial Services, Inc. v. Waterer*, 2011 WL 6382137 at *3 (Wash. App. Dec. 19, 2011) ("Disclosure of a trade name is insufficient disclosure of a principal."); *Robinson & St. John Advertising and Public Relations, Inc. v. Lane*, 557 So.2d 908, 910 (Fla. App. 1990) ("[T]he use of a trade name is not necessarily a sufficient disclosure of the identity of the principal and the fact of agency so as to protect the agent against personal liability."); *G.W. Andersen Construction Co. v. Mars Sales*, 210 Cal. Rptr. 409, 411-12 (Cal. App. 1985) (where checks and letterhead referred to trade name "Mars Sales," but corporate name was "Mars Sales Company, Inc.," fact of agency but identity of principal undisclosed, and agent was personally liable on contract). *See generally Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F.Supp.2d 618, 625 (D. Md. 2003) (noting that majority of jurisdictions adhere to this position) (citing *Use of tradename in connection with contract executed by agent as sufficient disclosure of agency or principal to protect agent against personal liability,* 150 A.L.R. 1303 (2011)); *Capsavage v. Esser*, 591 N.W.2d 888, 893 (Wis. App. 1999) (collecting cases).

  Whether a principal has been disclosed is a question of fact. *Waste, Water & Land, Inc.*, 955 P.2d at 1002. I find that defendants are not entitled to summary judgment on the question whether of the Brookses may be held individually liable on the contract as agents for a partially disclosed principal.

11

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendants' Motion for Partial Summary Judgment and Memorandum Brief** [#58], filed January 31, 2012, is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART**;

2. That the motion is **GRANTED** as follows:

a. With respect to plaintiffs' First Cause of Action for breach of implied warranty of fitness for a particular purpose pursuant to the Colorado Uniform Commercial Code – Sales, §4-2-315, C.R.S.;

b. With respect to plaintiffs' Second Cause of Action for breach of the implied warranty of merchantability pursuant to the Colorado Uniform Commercial Code – Sales, §4-2-314, C.R.S.; and

c. With respect to plaintiff's Fourth Cause of Action for false representation (originally designated in the Amended Complaint as "deceit based on fraud");

3. That the claims enumerated in paragraph 2 above are **DISMISSED WITH PREJUDICE**;

4. That the motion is **DENIED AS MOOT** with respect to plaintiffs' claims under the Magnuson-Moss Warranty Act and the Colorado Consumer Protection Act, and for conversion, and those claims are **DISMISSED WITH PREJUDICE**;

5. That at the time judgment enters, judgment **SHALL ENTER** on behalf of defendants, Donald Brooks, Normandy Brooks, individuals d/b/a B&T Custom Rod and Restoration, and B&T Automotive, Inc., a Nevada corporation, against plaintiffs, Terry A.

Janke and Michele Janke, as to plaintiffs' First, Second, and Fourth Causes of Action as set forth in the **Final Pretrial Order** ¶ 3.A at 1-9 [#73], filed March 19, 2012), as well as with respect to plaintiffs' claims for conversion (set forth in the **Amended Complaint ¶¶ 95-99**), for violation of the Magnuson-Moss Warranty Act (set forth in the **Amended Complaint ¶¶ 45, 52**), and for violation of the Colorado Consumer Protection Act (set forth in the **Amended Complaint ¶¶ 59-70**); provided, that the judgment as to these claims shall be with prejudice; and

    5. That the motion is **DENIED** with respect to plaintiffs' sole remaining Third Cause of Action for breach of contract as against the individual defendants, Donald Brooks and Normandy Brooks.

    Dated April 11, 2012, at Denver, Colorado.

                                                  **BY THE COURT:**

                                                  */s/ Robert E. Blackburn*
                                                  Robert E. Blackburn
                                                  United States District Judge