IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-00837-REB-BNB

TERRY A. JANKE, and
MICHELE JANKE.

Plaintiffs,

v.

DONALD BROOKS,
NORMANDY BROOKS, individuals d/b/a B&T Custom Rod & Restoration, and
B&T AUTOMOTIVE, INC., a Nevada corporation,

Defendants.

_____

# ORDER
_____

This matter arises on the **Defendants' Motion Regarding Spoliation of Evidence** [Doc. # 75, filed 3/23/2012] (the "Motion for Sanctions"). I held a hearing on the Motion for Sanctions on April 23, 2012, at which I received evidence and heard the arguments of counsel. The Motion for Sanctions [Doc. # 75] is DENIED.

The facts of the case are set out in the recent order of the district judge granting in part and denying in part the Defendants' Motion for Partial Summary Judgment. Order [Doc. # 83, filed 4/11/2012]. In the broadest sense, this action alleges breach of contract in connection with the restoration of a 1957 Chevrolet Nomad.

The suit was commenced on April 1, 2011. It is undisputed that after the suit was filed substantial work was performed on the Nomad by other craftsmen and at the direction of the plaintiffs to correct alleged defects in the defendants' restoration efforts and to restore the car to the condition desired by the plaintiffs. In fact, since May 16, 2011, the Nomad has been

completely disassembled; a new frame has been installed; substantial work has been performed on virtually every system; the body has been taken down to the metal and substantial additional body work has been performed; and the Nomad has been prepared for final painting, although it does not appear that the paint job has been completed.

The defendants claim that the work performed on the Nomad after suit was filed constitutes spoliation of evidence, and they seek dismissal of the action as a sanction. Motion for Sanctions [Doc. # 75] at p. 13. The thrust of the defendants' argument is that although the components and parts have been preserved and are available for inspection, the relationship between the parts and installation has been altered. For example, the defendants argue:

> Even though the frame is still available as removed from the Nomad, the claims regarding whether the frame was rubbing on a part, or improperly "notched" is all destroyed because the relationship between the parts and the installation on the Nomad has been altered through the installation of a brand new car frame by Plaintiffs. The same is true for all other parts that allegedly were rubbing on another car part or were placed incorrectly.

Id. at pp. 7-8.

The Tenth Circuit Court of Appeals has held:

> Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence. But if the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith. Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case. Without a showing of bad faith, a district court may only impose lesser sanctions.

Turner v. Public Service Co. of Colorado, 563 F.3d 1136, 1149 (10th Cir. 2009)(internal quotations and citations omitted).

The determination of a spoliation motion involves a three-step process. <u>Asher Associates, LLC v. Baker Hughes Oilfield Operations, Inc.</u>, 2009 WL 1328483 at *5 (D. Colo. May 12, 2009). First, the court must determine whether the evidence at issue is relevant to the matters in dispute. If it is, the court must decide whether there was an obligation to preserve the evidence. Finally, if such an obligation existed, the court must review "the non-moving party's degree of culpability, the degree of prejudice to the moving party, and the purposes to be served by exercising the court's power to sanction." <u>Id</u>.

Here, there can be no serious debate that the altered or destroyed evidence is relevant to the dispute. The Nomad was substantially altered after suit was filed, at a time when the plaintiff's certainly had a duty to preserve evidence. Consequently, I am left to consider "what sanction, if any, is appropriate. . . ." <u>Id</u>.

I find that the plaintiffs did not act in bad faith. To the contrary:

(1)   On May 16, 2011, plaintiffs' counsel met with the defendants' initial lawyer and "offered to set up a meeting . . . to inspect those elements of the build which were called into question."[1] Affidavit of Scott L. Terrell [Doc. # 80-4] (the "Terrell Aff.") at ¶3. The defendants' subsequently engaged other counsel, Mr. Vriesman, and the offer to inspect was renewed. <u>Id</u>. According to the plaintiffs' lawyer:

> 4. On 20 June, 2011, the undersigned spoke with Mr. Vriesman, and reiterated that the Nomad was at Seyfer Automotive, Inc., **was being repaired,** discussed the non-conforming elements discovered with the repairs, **and reiterated the Janke's desire to have the parties meet with Mr. Seyfer to inspect and discuss**

---

[1] The Terrell Affidavit states that the offer was made on May 16, **2010**. Terrell Aff. [Doc. # 80-4] at ¶3. When read in context, it is clear that this is a typographical error and that the offer to inspect was made on May 16, **2011**.

3

> **the questionable elements of the build without formal discovery.**
>
> 5.  On 20 June, 2011, Mr. Vriesman told the undersigned that he [Vriesman] was "*OK with sitting down and looking at the vehicle*", was not sure what the negotiations were all about, but that before he would agree to any inspection, he wanted the undersigned to prepare a "top ten list" of those major items which we believed were problems with the build for his review, because inspection of the Nomad before then would be a "*waste of time*"

Id. at ¶¶4-5 (bolded underlining supplied; italics in original).

Defense counsel does not dispute that an offer to inspect was made, stating that "Plaintiffs' counsel offered for Defendants' counsel to view the Nomad in the R-Goods body repair shop" but that "[t]his offer was deferred until after discovery or some explanation was received from Plaintiffs that specifically set out the alleged 'defects' or 'problems.'" Motion for Sanctions [Doc. # 75] at p. 2.

The defendants were notified that the plaintiffs intended to make alterations to the Nomad and were given the opportunity to inspect it before those alterations occurred.  The defendants thus made the tactical decision not to inspect the Nomad prior to the subsequent repairs;

  (2) The plaintiffs' craftsmen who performed the subsequent restoration, Messrs. Seyfer and Aregood, preserved the damaged and defective parts which they removed during their restoration efforts.  In addition, they generated extensive documentation of the condition of the Nomad before and during their restoration efforts, including records of the work performed and extensive photographs of the condition of the Nomad when they received it and throughout the progress of their work; and

  (3) There is substantial legal authority that the approach taken by the plaintiffs is

permitted. For example, in Jordan F. Miller Corp. v. American Eagle Ins. Co., 1998 WL 68879 (10th Cir. Feb. 20, 1998), an unpublished opinion of the circuit court, an airplane crashed while landing. An FAA inspector determined that the cause of the crash was "the left main landing gear collapse. . . ." Id. at **1. The landing gear was removed and the airplane was repaired. Neither the trial court nor the circuit court found any fault in these actions. The problem arose, instead, when it was learned that "all but one of the component parts of the left landing gear has been lost or destroyed." Id. at **2. The trial court imposed a sanction based on the loss of the removed parts, not because the airplane was repaired, id. at **6, and the circuit court affirmed.

Similarly, in Burlington Northern and Santa Fe Railway Co. v. Grant, 505 F.3d 1013 (10th Cir. 2007), the circuit court affirmed a decision denying spoliation sanctions. In Grant, the defendant claimed that the railroad had spoiled evidence by removing a tar-like material (TLM) which migrated from the defendant's property downhill onto the railroad's property. Id. at 1018. The circuit court ruled:

> [W]e conclude that no reasonable finder of fact could determine that Grant was meaningfully prejudiced by BNSF's removal and destruction of portions of the TLM on its property. The gravamen of Grant's argument regarding prejudice is that he cannot defend this lawsuit because BNSF's clean-up altered the topography and slope of the land, and prevented him from having the alleged TLM migration measured scientifically. We reject this claim. BNSF generated extensive documentation of the condition of the land before and during remediation, and the factual dispute regarding any change in elevation of the remediation site amounts to, at most, one and a quarter inches. In light of this, and absent meaningful evidence that Grant has been actually, rather than merely theoretically, prejudiced, we affirm the district court's denial of Grant's motion for spoliation sanctions.

Id. at 1032.

In addition, I find that the defendants have failed to establish that they have suffered any

actual prejudice as a result of the subsequent restoration efforts. First, and perhaps most important, is the fact that the defendants performed the work in question and maintained extensive records, including photographs, of the condition of the Nomad when it was delivered and of the work they performed. The defendants know and have substantial evidence concerning the work they performed on the Nomad and its condition when it was delivered to the plaintiffs. In addition, the defendants engaged an appraiser who inspected the Nomad at the time it was delivered to the plaintiffs and recorded the results of his inspection, including more photographs.

The defendants had the opportunity to inspect the Nomad before the post-suit restoration work was performed and elected for tactical reasons not to conduct the inspection. Consequently, I find that any prejudice suffered by the defendants is of their own making.

Finally, the defendants have had the opportunity to depose Messrs. Seyfer and Aregood, who have testified at length about the condition of the Nomad, their criticisms of the work performed by the defendants, and their efforts to restore the car. See Turner, 563 F.3d at 1150.

In connection with the spoliation of evidence, "a court should impose the least onerous sanction that will remedy the prejudice and, where applicable, punish the past wrongdoing and deter future wrongdoing." Jordan F. Miller Corp., 1998 WL 68879 at **6. I find in this case that there has been no showing of actual prejudice to the defendants. In addition, "a failure to produce or preserve relevant evidence may involve conduct that falls along a continuum of fault--ranging from innocence through degrees of negligence to intentionality." Asher Associates, 2009 WL 1328483 at *8 (internal quotation and citation omitted). The failure to preserve in this case, if any, was innocent. The imposition of a spoliation sanction under these facts--in the absence of any prejudice to the defendants and without any wrongdoing by the plaintiffs--would

be unnecessary and improper.

IT IS ORDERED that the Motion for Sanctions [Doc. # 75] is DENIED.

Dated April 25, 2012.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge